# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HERBERT WILLIAMS, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHICAGO, CHICAGO POLICE ) <br> OFFICERS O'BRIEN #10634 AND ) <br> BYRNE #5304, ) <br> ) <br> Defendants. ) | Civil Action No. 10 C 6234 <br><br> Hon. Charles R. Norgle |

## OPINION AND ORDER

Before the Court is Defendants City of Chicago and Chicago Police Officers Joseph O'Brien ("O'Brien") and Mathew Byrne's ("Byrne") (collectively, "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the motion is granted.

## I. BACKGROUND[1]

On November 18, 2009, Officers O'Brien and Byrne (collectively, the "Officers")—partners assigned to the Chicago Police Department's Fifth District—were driving northbound on Michigan Avenue when they saw a large smoke cloud. The Officers drove toward the smoke and discovered that the residence of 11144 South Edbrooke was on fire. The Officers recall that, as they arrived at the scene, they saw the Plaintiff, Herbert Williams ("Williams"), exiting the burning residence. Williams strongly

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts within the text.

disputes that he went inside 11144 South Edbrooke. However, there is no dispute that Williams was on the porch of 11144 South Edbrooke when the Officers arrived.

Upon their arrival, the Officers exited their car and approached Williams on the porch. Williams told them that there was a fire in the back of the residence on the upper floors, that he believed people were in the residence, and that he was banging on the door to warn people to get out. Williams then watched as O'Brien kicked open the front door to gain entry to the residence. After the Officers entered, Williams crossed the street and entered his home, where he called 911 to report the fire.

During their sweep of 11144 South Edbrooke, the Officers saw what they believed to be evidence of arson: burning wood that was neatly packed in a pile, a burning mattress, and burning newspaper that had been twisted up and shoved into the exposed insulation. They did not find anyone inside the residence. After completing the sweep and exiting the building, O'Brien saw Williams at the entrance to his residence across the street, at 11145 South Edbrooke. O'Brien entered Williams's home and examined his hands with a flashlight. The two men then exited the residence, at which time O'Brien asked Williams for his identification. Williams produced his postal service, veterans, and state identification cards. O'Brien then handcuffed Williams, placed him into the squad car, and drove him to the Fifth District police station, where he was held in an interrogation room, handcuffed to a wall.

Chicago Police Bomb and Arson Detective Janice Govern ("Detective Govern") was assigned to investigate the fire. Detective Govern viewed and photographed the scene of the fire, spoke with the owner of 11144 S. Edbrooke, Carl Branigan ("Branigan"), and ultimately determined that no chemical agent or accelerant was used in the fire.

2

Detective Govern did not ask Branigan if he wanted to sign a criminal complaint against Williams, and Branigan did not tell Detective Govern that he wanted to prosecute Williams for criminal trespass to his residence.

Following her investigation, Detective Govern met with Williams, who remained in custody, and advised him of his Miranda rights. Williams, choosing to voluntarily speak with Detective Govern, told her that he saw the house was on fire and knocked on the door hoping to warn the people living there. Williams denied ever being inside of 11144 South Edbrooke. Detective Govern subsequently consulted Jennifer Sexton of the Cook County State's Attorney Felony Review Unit ("ASA Sexton"). ASA Sexton declined to approve the filing of felony arson charges. Neither Detective Govern nor the Officers asked ASA Sexton if Williams should be charged with criminal trespass to residence.

After Detective Govern told the Officers that Williams could not be charged with arson, the Officers had a conversation and decided, with Detective Govern's approval, to charge Williams with criminal trespass to residence, a Class A misdemeanor. Neither Officer spoke with Branigan, the owner of 11144 S. Edbrooke, before O'Brien signed the criminal trespass complaint. After informing Williams of the criminal trespass charge, Williams recalls that Byrne told him that "this most likely will get thrown out. All you have to do is show up for court." Pl's L.R. 56.1 Statement ¶ 35. The case against Williams was dismissed in the Circuit Court of Cook County on December 18, 2009.

Williams filed this civil rights action on September 29, 2010, alleging unlawful arrest under 42 U.S.C. § 1983 and malicious prosecution under Illinois law. Defendants moved for summary judgment on November 17, 2011. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the record and draws all reasonable inferences in the light most favorable to the nonmoving party. Zerante v. DeLuca, 555 F.3d 582, 584 (7th Cir. 2009). The Court does not "make credibility determinations [or] weigh the evidence." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citation omitted).

To survive a motion for summary judgment, the non-moving party must identify "with reasonable particularity" the evidence in the record that shows a genuine triable dispute of material fact. Hemsworth, II v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007). The movant will prevail where the record as a whole demonstrates that "a rational trier of fact could not find for the non-moving party." Williams v. OSI Educ. Servs., Inc., 505 F.3d 675, 678 (7th Cir. 2007) (internal quotation marks and citation omitted). "Where the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the motion must be denied." Payne, 337 F.3d at 773 (citation omitted). However, "[a] genuine issue of material fact is not demonstrated by the existence of *some* alleged factual dispute between the parties, or by some metaphysical doubt as to the material facts." Weeks v. Samsung Heavy Indus. Co., 126 F.3d 926, 933 (7th Cir. 1997) (internal quotation marks and citations omitted). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and must present sufficient evidence to create genuine issues of

material fact to avoid summary judgment." Sow v. Fortville Police Dep't, 636 F.3d 293, 300 (7th Cir. 2011) (citing McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010)).

## B. Defendants' Motion for Summary Judgment

### 1. False Arrest

"Section 1983 allows citizens whose constitutional rights have been violated by public officials to sue those officials in their individual capacities." Fleming v. Livingston Cnty., Ill., 674 F.3d 874, 878 (7th Cir. 2012). Williams alleges that the Officers violated his Fourth Amendment right to be free from unreasonable searches and seizures by arresting him without probable cause. Defendants move for summary judgment on the ground that the Officers had probable cause to arrest Williams or, at a minimum, that they are entitled to qualified immunity.

"The constitutionality of a warrantless arrest for a criminal offense turns on the existence of probable cause for the arrest." Sow, 636 F.3d at 301 (citing Woods v. City of Chi., 234 F.3d 979, 992 (7th Cir. 2000)). "[I]f [the officer] actually did have probable cause to arrest [the plaintiff], then a Fourth Amendment claim for false arrest is foreclosed." Fleming, 674 F.3d at 878 (internal quotation marks and citation omitted). "A police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within her knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." Id. at 878-79 (internal quotation marks and citation omitted); see also Beck v. Ohio, 379 U.S. 89, 91 (1964). "This standard 'does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable.'" Fleming, 674 F.3d at 879 (quoting Qian v. Kautz, 168 F.3d 949, 953

(7th Cir. 1999)). Indeed, the "rule of probable cause is a 'practical, nontechnical conception' that affords the 'best compromise' between the interests of individual liberty and effective law enforcement." Woods, 234 F.3d at 996 (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). "Arresting officers may draw reasonable inferences based on their training and experiences in determining whether suspicious circumstances rise to the level of probable cause." Thompson v. Wagner, 319 F.3d 931, 934-35 (7th Cir. 2003). The existence of probable cause "turns on the information known to the officers at the moment the arrest [was] made, not on subsequently received information." Id. (internal quotation marks and citation omitted).

Defendants sole argument is that summary judgment should be denied in light of the factual dispute over whether the Officers saw Williams exit 11144 South Edbrooke. The "mere existence of some alleged factual dispute," however, "will not defeat an otherwise properly supported motion for summary judgment." Hannemann v. S. Door Cnty. Sch. Dist., 673 F.3d 746, 751 (7th Cir. 2012) (internal quotation marks and citation omitted). Here, the determination of probable cause does not rest upon whether the Officers saw Williams exit the burning residence. To the contrary, there are multiple other facts upon which the Officers' determination of probable cause was reasonably based. Williams admits that he was on the porch of 11144 South Edbrooke when the officers arrived to the scene. Indeed, Williams was the only individual that the Officers observed at or near the scene when they first arrived. Further, there is no dispute that, during their sweep of the building, the Officers discovered what they reasonably believed to be evidence of arson: burning wood that was neatly packed in a pile, a burning mattress, and burning newspaper that had been twisted up and shoved into the exposed

6

insulation. When they exited the residence, the Officers saw Williams standing across the street, outside of what they later learned was his residence. Even assuming Williams did not enter 11144 South Edbrooke, as the Court must on Defendants' motion for summary judgment, these facts are sufficient, taken together, to establish that the Officers' reasonably believed that Williams had committed an offense.

Furthermore, the fact that Williams had a reasonable explanation for his presence on the porch—trying to warn people of the fire—does not change this result. Probable cause does not require an officer's belief to be "more likely true than false," Fleming, 674 F.3d at 879, and "a person's ability to explain away seemingly damning facts does not negate the existence of probable cause, even though it might provide a good defense should the case go to trial," Sroga v. Weiglen, 649 F.3d 604, 608 (7th Cir. 2011) (internal quotation marks and citation omitted). Accordingly, Defendants' motion for summary judgment on the false arrest claim is granted. Because the arrest, as a matter of law, did not violate the Fourth Amendment, it is unnecessary to reach Defendants' qualified immunity argument.

## 2. *Malicious Prosecution*

Williams's malicious prosecution claim is based on Defendants' criminal trespass to residence charge pursuant to 720 ILCS 5/19–4(a)(1), which is a Class A misdemeanor. See 720 ILCS 5/19–4(b)(1). The statute provides: "A person commits the offense of criminal trespass to a residence when, without authority, he knowingly enters or remains within any residence, including a house trailer." 720 ILCS 5/19–4(a)(1); see also Jones by Jones v. Webb, 45 F.3d 178, 183 (7th Cir. 1995).

"In order to prevail on a malicious prosecution claim, a plaintiff must establish '(1) the commencement or continuance of an original criminal or civil judicial proceeding by

7

the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.'" Holland v. City of Chi., 643 F.3d 248, 254 (7th Cir. 2011) (quoting Swick v. Liautaud, 662 N.E.2d 1238, 1242 (Ill. 1996)). The absence of any of these elements bars a plaintiff from pursuing the claim. Id.

Here, Williams has not established the presence of malice, an element on which he bears the ultimate burden of proof. See Barrientos v. Haritos, 836 F. Supp. 2d 670, 676 (N.D. Ill. 2011). In this context, malice means "that the officer who initiated the prosecution had 'any motive other than that of bringing a guilty party to justice.'" Aleman v. Vill. of Hanover Park, 662 F.3d 897, 907 (7th Cir. 2011) (citing Rodgers v. Peoples Gas, Light & Coke Co., 733 N.E.2d 835, 842 (Ill. App. Ct. 2000)); see also Holland, 643 F.3d at 255 ("Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice."). "[A] plaintiff may demonstrate malice by showing that the prosecutor proceeded with the prosecution for the purpose of injuring plaintiff or for some other improper motive." Aguirre v. City of Chi., 887 N.E.2d 656, 663 (Ill. App. Ct. 2008) (citation omitted)).

Williams argues that Byrne's statement that the charge "most likely will get thrown out" is an "admission of a sham prosecution" sufficient to constitute direct evidence of malice. Pl.'s Mem. in Opp. to Defs.' Mot. for Summ J. 12. This lone cynical speculation, however, is hardly an admission of a "sham prosecution." Even viewed in the light most favorable to Williams, this fact alone is not enough to establish that the charge itself was brought in bad faith. See generally Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) ("The mere existence of a scintilla of evidence in support of the

8

nonmoving party's position will be insufficient to survive a summary judgment motion." (citation omitted)). There is no evidence of any animosity between Williams and the Officers, and, other than Byrne's speculative statement, Williams offers no evidence to suggest that the Officers' motive in charging him with criminal trespass was improper. To find malice based on this statement alone would require the Court to draw unreasonable—and overly speculative—inferences about the Officers' mental states at the time the complaint was signed. Byrne, for example, might have believed, based on his experience, that the charge was likely to be thrown out for reasons entirely unrelated to the Officers' motive in bringing the charge. Williams has not satisfied his burden to establish the presence of malice.

Finally, while Williams is correct that malice may be "inferred from want of probable cause when the circumstances are inconsistent with good faith by the prosecutor and where the want of probable cause has been clearly proved," Aguirre, 887 N.E.2d at 663 (internal quotation marks and citation omitted), such is not the case here. The Officers saw Williams on the front porch of a residence that, at time they signed the criminal charge, they knew was not his home.[2] While the parties dispute whether Williams entered the residence, the Officers' belief that he had, even if mistaken, was not unreasonable under the circumstances. See Rodgers, 733 N.E.2d at 842 ("It is the state of mind of the one commencing the prosecution, and not the actual facts of the case or the guilt or innocence of the accused, which is at issue." (citations omitted)). Further, the fact that the residence was empty supported the Officer's conclusion that Williams had entered the premises without authority. On these facts, the want of probable cause has

---

[2] "For purposes of a malicious prosecution claim, the pertinent time for making the probable cause determination is the time when the charging document is filed, rather than the time of the arrest." Holland, 643 F.3d at 254

9

not been "clearly proved" such that that the Court must infer that the Officers acted with malice. Because Williams has not established the presence of malice, Defendants' motion for summary judgment on the malicious prosecution claim is granted.

### 3. Additional Claims Asserted in Williams's Response Brief

In his Response to Defendants' Motion for Summary Judgment, Williams, for the first time, claims that his post-arrest search was unreasonable and unlawful and that his identification cards were unreasonably seized. Williams's complaint—which is a mere one-and-a-half pages—pleads no facts in support of these allegations, and Williams has never sought leave to file an amended complaint.

"It is well settled that a plaintiff may not advance a new argument in response to a summary judgment motion." Abuelyaman v. Ill. State Univ., 667 F.3d 800, 814 (7th Cir. 2011); see also EEOC v. Lee's Log Cabin, Inc., 546 F.3d 438, 443 (7th Cir. 2008) (holding that a response to a motion for summary judgment is "'too late' to change so basic a factual premise in the case"); Conner v. Ill. Dep't of Natural Res., 413 F.3d 675, 679 (7th Cir. 2005) (upholding district judge's refusal to consider a claim raised for the first time in a response to summary judgment); Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." (quoting Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996)); Whitaker v. T.J. Snow Co., 151 F.3d 661, 664 (7th Cir. 1998) ("Because [plaintiff] did not seek leave to add the negligence count but instead merely inserted the claim in her brief in opposition to summary judgment . . . [plaintiff] waived this theory of recovery and we do not consider it further.").

Attempting to justify his new claims, Williams refers to Hatmaker v. Memorial Medical Center, 619 F.3d 741 (7th Cir. 2010). At issue in Hatmaker was the provision of Title VII that forbids an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The plaintiff originally claimed that she was fired because she opposed an unlawful employment practice. In her response to a motion for summary judgment, however, she emphasized, for the first time, that she was fired because she participated in an investigation under Title VII. The Seventh Circuit allowed the new argument, explaining that, "[a]lthough Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), require that a complaint in federal court allege facts sufficient to show that the case is plausible, they do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories. Even citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction." Hatmaker, 619 F.3d at 743 (internal citations omitted).

Unlike Hatmaker—where the plaintiff pled facts but failed to plead the proper legal theory—Williams's complaint fails to plead any facts in support of the additional claims he seeks to assert. Williams cannot advance new arguments in his response to Defendants' summary judgment motion when "the record is entirely devoid of any mention of [these] argument[s] before the summary judgment stage of the proceedings." Abuelyaman, 667 F.3d at 813-14.

Moreover, Williams does not include his proposed new claims in his agreed description of the case which, as part of the final pretrial order, was filed five days <u>after</u> Williams asserted these new arguments in his summary judgment response brief. The final pretrial order states:

> **Short Agreed Description of Case to be Read to Prospective Jurors**
> The Plaintiff, Herbert Williams, claims that he was unlawfully arrested by Defendant Chicago Police Officers Joseph Byrne and Matthew O'Brien. The Plaintiff contends that the officers did not have a reasonable basis to arrest him and that they arrested him by unlawfully entering his home. The defendants agree that they arrested plaintiff but deny any wrongdoing.
> After he was arrested, the defendant officers charged plaintiff with the offense of "Criminal Trespass to a Residence." A judge of the Circuit Court of Cook County dismissed this charge at plaintiff's first court appearance. Plaintiff contends that the officers did not have a reasonable basis to file this charge, and that they acted maliciously. Defendants deny that they acted wrongfully in causing plaintiff to be charged with "Criminal Trespass to a Residence."

Final Pretrial Order 11; <u>see</u> also <u>id.</u> at 1 ("This is a civil rights action for unlawful arrest under 42 U.S.C. § 1983 and for malicious prosecution under Illinois law."). By Williams's own admission, this is a false arrest and malicious prosecution case, and no more. Williams's new claims, asserted for the first time in his summary judgment response brief, have been waived and the Court therefore does not consider them.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and this case is dismissed. The parties pending motions *in limine* are therefore denied as moot.

IT IS SO ORDERED.

ENTER:

*Charles Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: September 19, 2012